UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TIMOTHY E. CICHOCKI and          )
Y. DOLLY HWANG,                  )
                                 )
          Plaintiffs,            )
     v.                          )          CIVIL ACTION
                                 )          NO. 15-10663-JGD
MASSACHUSETTS BAY                )
COMMUNITY COLLEGE, et al.,       )
                                 )
          Defendants.            )

**MEMORANDUM OF DECISION AND
ORDER ON DEFENDANTS' MOTION TO DISMISS**

August 8, 2016

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiffs, Timothy E. Cichocki ("Cichocki") and his wife, Y. Dolly Hwang ("Hwang"),

are former professors at Massachusetts Bay Community College ("Mass Bay").  They have

brought this *pro se* action against the college; its former President, John O'Donnell

("O'Donnell"); Robin Nelson-Bailey ("Nelson-Bailey") who was chief Personnel Officer at Mass

Bay and is now Director of Human Resources; and Valerie Gaines ("Gaines"), the former Human

Resources Director.  This suit follows the dismissal of another action brought in this court by

Cichocki alone in 2012 against the same defendants.  Both suits challenge the defendants'

alleged responses to Cichocki's contention that he was sexually harassed and manipulated into

a sexual relationship with his then colleague, Helen Mcfadyen ("Mcfadyen").  See Cichocki v.

Mass. Bay Cmty. Coll., et al., Civil Action No. 12-10728-GAO (the "2012 Litigation").  The

plaintiffs assert that the defendants not only failed to take action after Cichocki complained of

the harassment, but also deliberately engaged in unlawful conduct and retaliation against the

plaintiffs.

By their complaint, the plaintiffs assert nine claims, including claims for negligent hiring

and supervision (Counts I and II), Title VII violations (Counts III and IV (incorrectly numbered

VI)), and violations of the Fair Labor Standards Act (FLSA), the Massachusetts Wage Act (MWA)

and the Access to Medical Report Act (Count V).  In addition, the plaintiffs allege multiple

alleged constitutional violations and have asserted various claims pursuant to 42 U.S.C. § 1983

(Counts VI, VII, VIII, and IX).

The matter is presently before the court on the defendants' Motion to Dismiss (Docket

No. 42) brought on behalf of all the defendants who have been served.[1]  By their motion, the

defendants argue that the court should dismiss all Counts of the Complaint based on Eleventh

Amendment immunity, *res judicata* and/or failure to state a claim upon which relief can be

granted.  For all the reasons detailed herein, the defendants' motion to dismiss is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[2]

Where the plaintiff is proceeding *pro se*, the court must construe the plaintiff's

allegations liberally.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251

---

[1]  The defendant Valerie Gaines has never been served.  However, this decision will address all the counts of the Complaint, including Count IX, which is directed solely to defendant Gaines.

[2]  The facts are taken from the Plaintiffs' Complaint (Docket No. 1) ("Compl."), the Defendants' Memo-randum in Support of Motion to Dismiss (Docket No. 43) ("Def. Mem."), and Judge Collings Report and Recommendation on Plaintiffs' Motion for a Preliminary Injunction in the 2012 Litigation (Docket No. 32 in the 2012 Litigation) ("R&R"), a copy of which is attached to Defendants' Memorandum as Ex. A. Plaintiffs' Opposition to Defendants' Motion to Dismiss (Docket. No. 44) will be cited as "Opp."  Where possible, citations will be to specific paragraphs of the Complaint.  Where paragraph numbers

(1976) (a *pro se* complaint, even if poorly pleaded, must be liberally construed).  However, "the

necessary factual averments are required with respect to each material element of the

underlying legal theory."  Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990) (citing

Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  This burden rests upon the

pleader and "initial failure to satisfy the burden in no way obligates the district court to allow

the parties an opportunity to offer matters outside the pleadings."  Id.  Nevertheless, the court

may consider, "in addition to the complaint itself, a limited array of additional documents such

as any that are attached to the complaint."  Giragosian v. Bettencourt, 614 F.3d 25, 27-28 (1st

Cir. 2010) (quoting Miss. Pub. Emp. Ret. Sys. v. Boston Sci. Corp., 523 F.3d 75, 86 (1st Cir.

2008)).  Applying this standard, the relevant facts are as follows.

### Background

Cichocki was a Professor of Electrical Engineering at Mass Bay, and taught there from

1992 until the events at issue in this litigation in 2012.  See Compl. at 4.  Hwang was Division

Dean of Math, Science and Engineering at Mass Bay from 1991 to 1993, and she married

Cichocki sometime after she left the school.  Id. at 5.  While Division Dean she hired Cichocki,

but rejected Mcfadyen (nee Corrigan) for a position.  Id. at ¶¶ 2-5.  Mcfadyen was hired after

Hwang left.  Id. at ¶ 5.  It is Hwang's contention that Mcfadyen pursued a relationship with

Cichocki to get back at Hwang for refusing to hire her.  Id. at 3.

According to the Complaint, Mcfadyen began pursuing Cichocki in or about 2005, by

which time he was married to Hwang.  Id. at ¶¶ 8-11.  A relationship developed.  See id. at ¶ 16.

---

are unavailable, citations will be to pages of the Complaint.

The crux of the Complaint is that Mcfadyen manipulated Cichocki into a destructive relationship

that strained his marriage to Hwang.  See id. at ¶¶ 8-26.  In May 2011, Cichocki decided to end

the relationship with Mcfadyen and asked Hwang to help.  Id. at ¶ 26.  Around the same time,

Mcfadyen complained to the Wellesley Police that Cichocki had sexually harassed her.  Id. at

¶ 27.  After the police dismissed her complaint, Mcfadyen filed a sexual harassment complaint

against Cichocki with the college's chief personnel officer, Nelson-Bailey.  Id. at ¶¶ 27-28.  As

the plaintiffs allege:

> Considering the obvious fact that to all eyes Mcfadyen could not possibly be
> perceived in any way to be a subject of sexual interest, along with the fact
> that the much younger looking and physically fit Cichocki, who had a wife
> that looked more than a generation younger than Mcfadyen, and also turned
> heads on street, could not possibly be having sexual interest in Mcfadyen,
> Cichocki expected that Nelson-Bailey would quickly dismiss the complaint.
> On the other hand, Mcfadyen's violent reaction to Cichocki's demand to
> leave him alone caused Cichocki and Hwang to be concerned with the
> escalation of Mcfadyen's vengeance.  They decided to report the whole story
> of Mcfadyen to the college, including Hwang's connection to Mcfadyen's
> vengeful madness.

Id. at ¶ 28.

Over the plaintiffs' objections, the college accepted Mcfadyen's version of events and

disciplined Cichocki.  Id. at ¶¶ 29-30.  This allegedly emboldened Mcfadyen and forced Cichocki

"back into Mcfa[d]yen's control with renewed fears for Mcfadyen and further submission to

Mcfadyen's commands[.]"  Id. at ¶ 30.  It also "[m]ade Cichocki resentful to Hwang[.]"  Id.

In July 2011, Hwang made a request to the college to allow her to accompany Cichocki

to work, allegedly in order to protect him from Mcfadyen.  Id. at ¶ 31.  Mass Bay denied this

request and suggested to Mcfadyen that she file a restraining order.  Id.  The plaintiffs claim

that "Nelson-Bail[e]y conspired with Mcfadyen to make a false report to the college's campus

police of Hwang's physical threats to Mcfadyen to have a no trespass order ne [sic] issued to

Hwang.  The order would prevent Hwang from accompanying Cichocki to work in the upcoming

fall semester."  Id.  As a direct result of the defendants' actions, Cichocki apparently resumed

his relationship with Mcfadyen; Hwang had Cichocki arrested for domestic violence; Cichocki

was so distraught that he got into several car accidents; Cichocki, at Mcfadyen's suggestion, had

Hwang committed to McLean Hospital; and Mcfadyen filed a harassment complaint against

Hwang in Stoughton District Court, which was eventually dismissed.  Id. at ¶ 32.

On December 12, 2011, in violation of the no trespass order, Hwang accompanied

Cichocki to work.  Id. at ¶ 33.  Mcfadyen found out and called Nelson-Bailey, who arranged to

have campus police escort Hwang and Cichocki off campus.  Id.  Cichocki then emailed

O'Donnell, his supervisor, and Nelson-Bailey, and told them that "Mcfadyen's madness and

aggressions made it necessary to have Hwang's company at work for him to carry out work

duties in peace and security[,]" and that if Hwang could not accompany him, he would have to

take sick leave for the remaining four days of the semester.  Id. at ¶ 34.  Cichocki also requested

permission to teach online classes the following semester if Hwang was not allowed to

accompany him.  Id.  Mass Bay did not respond to these requests.  Id. at ¶ 35.  Mass Bay did,

however, request medical documentation to show why Hwang's presence at Cichocki's work

was required.  Id. at ¶ 36.  Although Cichocki sent in some documents, the college apparently

was not satisfied, and demanded Cichocki take a leave, which he refused.  Id.  Cichocki allegedly

filed a union grievance based on the alleged unlawful withholding of his salary and benefits, the

outcome of which is not known to this court.  Id.  According to the plaintiffs, the "college ha[s]

kept Cichocki out of work since February of 2012."  Id.

**Prior Litigation**

In 2012, Cichocki, as the sole plaintiff, brought suit against the same defendants challenging, "Mcfadyen's ruthless, incessant harassments against the plaintiff Cichocki at his work place." 2012 Litigation Compl. (Docket No. 1) at Count II.  The complaint stood in 11 counts, and Cichocki moved for a preliminary injunction ordering Mass Bay to "i) either withdraw, and timely notify the withdrawal of, the 'Trespassing Notice' it issued on August 11, 2011 against the plaintiff's wife, Y. Dolly Hwang . . . ii) or go to court to seek a restraining order against Y. Dolly Hwang within 20 days of receiving this order before taking any actions to bar her from accessing the college campus." R&R at 4-5.  He also sought to have his employment rights restored, with back pay and benefits.  Id. at 5.  On January 14, 2013, Magistrate Judge Robert B. Collings issued a Report and Recommendation recommending that the motion for a preliminary injunction be denied, and that "the Court issue an Order granting the plaintiff twenty-one (21) days to show cause in writing why his complaint should not be dismissed in its entirety for failing to state claims upon which relief may be granted." Id. at 31.

Although advised of his obligation to do so, Cichocki did not file any objections to the Magistrate Judge's Report, and the Report and Recommendation was adopted by the District Judge, following his independent review, on February 28, 2013.  2012 Litigation at Docket No. 33.  The plaintiff was given 21 days to show cause why the complaint should not be dismissed in its entirety for failing to state claims upon which relief can be granted.  Id.  The plaintiff failed to adequately respond to the Court's show cause order, and the complaint was dismissed on May 7, 2013.  2012 Litigation at Docket No. 38.  Cichocki filed a notice of appeal on June 5, 2013.  2012 Litigation at Docket No. 39.

On June 16, 2014, the First Circuit affirmed the denial of the preliminary injunction and the dismissal of the 2012 Litigation "substantially for the reasons stated in the magistrate judge's 1/14/13 report and recommendation, which the district court adopted on 2/28/13." 2012 Litigation at Docket No. 52.  In addition, the First Circuit denied plaintiff's motion for leave to amend his complaint.  Id.  Nevertheless, on December 10, 2014, Cichocki and Hwang purported to file an amended complaint with the District Court, which was stricken by the court.  2012 Litigation at Docket Nos. 54 & 55.  Cichocki and his wife commenced the instant action on March 5, 2015.  The parties have consented to having this matter decided by this Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure.  Docket No. 13.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.   Standard of Review – Motion to Dismiss for Failure to State a Claim

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane."  Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which

need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)). "Second, the court must determine whether the factual allegations are sufficient to

support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

(quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).

This second step requires the reviewing court to "draw on its judicial experience and common

sense." Id. (quoting Ashcroft v. Iqbal, 56 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868

(2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to

remove the possibility of relief from the realm of mere conjecture, the complaint is open to

dismissal." Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir.

2010)).

Applying these principles to the instant case compels the conclusion that the motion to

dismiss be allowed.

B.    **Negligence (Counts I & II)**

The plaintiffs claim that the defendant college negligently hired and supervised

Mcfadyen, and negligently failed to protect Hwang and Cichocki from Mcfadyen. Compl. at

Counts I and II. In their motion to dismiss, the defendants assert that both Count I and Count II

are barred by the Eleventh Amendment.[3] Defs. Mem. at 3-4. The plaintiffs oppose the motion

to dismiss the negligence claims only on the basis that Eleventh Amendment immunity has

---

[3] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be con-
strued to extend to any suit in law or equity, commenced or prosecuted against one of the United States
by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

been waived by the enactment of the Massachusetts Torts Claims Act ("MTCA").  Opp. at 4-6.

As detailed herein, it is well-established that enactment of the MTCA does not constitute a

waiver of immunity, and, therefore, the motion to dismiss will be allowed as to Counts I and II.

This court does rule further, however, that for the reasons detailed *infra*, this court would also

find that these counts are barred by *res judicata* since they are based on the same nucleus of

operative facts as the 2012 Litigation.

The Eleventh Amendment prohibits suits in federal courts against states, state agencies,

and state officials sued in their official capacities.  Will v. Mich. Dep't of State Police, 491 U.S.

58, 70-71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989); Pennhurst State Sch. & Hosp. v.

Halderman, 465 U.S. 89, 120, 104 S. Ct. 900, 918, 79 L. Ed. 2d 67 (1984).  It is undisputed that

Mass Bay qualifies as a state entity and therefore can assert Eleventh Amendment protection.

See Cardona Roman v. Univ. of P.R., 799 F. Supp. 2d 120, 125 (D.P.R. 2011) (University of Puerto

Rico considered an "arm" of the state, entitled to Eleventh Amendment immunity).  Similarly,

to the extent that O'Donnell and Nelson-Bailey are sued in their official capacities, they are also

subject to Eleventh Amendment protection.  Pennhurst State Sch., 465 U.S. at 102, 104 S. Ct. at

908-09.[4]

There are two exceptions to Eleventh Amendment immunity: state waiver and Con-

gressional abrogation.  Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106 n.14,

---

[4]  Count I asserts a claim against the college only, and alleges that "[t]he defendant college was
negligent in hiring and supervising the mentally unstable and academically unqualified Helen Corrigan
Mcfadyen[.]"  Compl. at 24.  In Count II, the plaintiffs allege that "[t]he defendant college and its
administrators were negligent in failing to protect Hwang and Cichocki from the harms of the mental
illness and the evils of Mcfadyen[.]"  Compl. at 29.  Thus, the negligence claims are clearly against the
college and the named defendants in their official capacities.

87 L. Ed. 2d 114 (1985).  In the instant case, the plaintiffs argue that the Commonwealth has waived sovereign immunity by enacting the MTCA.  Opp. at 4-6.  "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [the Supreme Court] will find waiver only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673 94 S. Ct. 1347, 1360-61, 39 L. Ed. 2d 662 (1974) (internal punctuation and citation omitted).  The First Circuit has explicitly held that "[b]y enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."  Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing Rivera v. Massachusetts, 16 F. Supp. 2d 84, 87-88 (D. Mass. 1998)) (additional citation omitted). See also Canales v. Gatzunis, 979 F. Supp. 2d 164, 174-75 (D. Mass. 2013) (MTCA's waiver of immunity is limited to suit in state court).  Consequently, the plaintiffs cannot maintain their negligence claims against the state entity in federal court.  Counts I and II must be dismissed.

## C.    Title VII Violations (Counts III & IV)

In Counts III and IV (incorrectly numbered VI), plaintiffs allege that the college, Nelson-Bailey and O'Connell violated Title VII of the Civil Rights Act[5] by failing to protect Cichocki from Mcfadyen's alleged sexual harassment and by retaliating against him due to his complaints. The defendants have moved to dismiss these counts due to the doctrine of *res judicata* and for failure to state a claim.  This court agrees that these Counts must be dismissed on the grounds of *res judicata*.  Therefore, it will not address the sufficiency of the pleadings to state a claim.

---

[5] Title VII prohibits, *inter alia*, "sex-based discrimination that creates a hostile or abusive work environment."  Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008).

### *Res Judicata*

*Res judicata* precludes parties from relitigating claims that were raised or could have

been raised in an action for which a final judgment has been issued.  Bay State HMO Mgmt.,

Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999), and cases cited.  Under the federal

law standard,[6] three elements must exist for claim preclusion to apply: (1) a final judgment on

the merits in an earlier suit; (2) sufficient identity between the causes of action asserted in the

earlier and later suits; and (3) sufficient identity between the parties in the earlier and later

suits.  Havercombe v. Dep't of Educ. of P.R., 250 F.3d 1, 3 (1st Cir. 2001) (citing Kale v.

Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991)).  As detailed below, this court

finds that all three elements of *res judicata* have been satisfied.

As an initial matter, the plaintiffs argue that the 2012 sexual harassment claim was not

dismissed based on the merits, but was dismissed based on an (incorrect) finding that Cichocki

had failed to exhaust his administrative remedies, *i.e.*, on procedural grounds.  See R&R at 12-

15.  Leaving aside the issue whether a dismissal for failure to exhaust constitutes a ruling on the

merits, Judge Collings clearly addressed the sufficiency of the plaintiff's claims.  Thus, he ruled

that the Title VII claim was not likely to succeed on the merits because "nowhere does

[Cichocki] plead the nature of the alleged unwelcome sexual harassment, demonstrate that the

harassment was based on sex, or sufficiently describe how the sexually objectionable conduct

was both objectively and subjectively offensive, such that a reasonable person would find it

---

[6] "Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court."  Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 582 (1st Cir. 1995).  Because the earlier judgment in this case was rendered by a federal court, the preclusive effect of that judgment in the instant case is governed by federal *res judicata* principles.

hostile or abusive and that he did in fact perceive it to be so" as required for a proper Title VII

claim. R&R at 14-15. Judge Collings further ruled that "the pleading deficiencies in his

complaint and motion render him unable to establish that his Title VII claim is likely to succeed

on the merits." Id. at 15. Cichocki failed to object to the Report and Recommendation. In

adopting the R&R, the District Judge gave the plaintiff 21 days to show cause why the complaint

should not be dismissed for failure to state claim. Cichocki failed to satisfy this order and the

complaint was dismissed on May 7, 2013. The dismissal of the complaint was affirmed by the

First Circuit, and Cichocki was denied leave to amend his complaint by both the First Circuit and

the District Court. This satisfies the requirement for a ruling on the merits. Isaac v. Schwartz,

706 F.2d 15, 17 (1st Cir. 1983) (under Massachusetts law and elsewhere, dismissal for failure to

state a claim constitutes a final judgment on the merits for *res judicata* purposes), and authori-

ties cited; Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp.2d 93, 99 (D. Mass. 2001) (applying

federal law), and cases cited. See also Restatement (Second) of Judgments § 27, comment d (a

ruling on a motion to dismiss for failure to state a claim constitutes a ruling on the merits for *res

judicata* purposes); Restatement (Second) of Judgments § 19, comment b (dismissal operates as

an adjudication on the merits for purpose of precluding another action).

The second element of *res judicata* requires sufficient identity between the causes of

action. This element is easily satisfied in the instant case since the 2012 Litigation, like the

instant case, included a claim that the defendants "violated Title VII of the Civil Rights Act by

fostering and exacerbating a hostile work environment and choosing to 'overlook the obvious

sexual nature of [Professor] Mcfadyen's ruthless, incessant harassments against Cichocki at his

workplace.'" R&R at 2.

The First Circuit applies a "transactional approach" to determine whether the causes of action in the earlier and later suits are identical. Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004). The court must examine the "nucleus of operative facts" in both the earlier and later claims: "[a]lthough a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." Apparel Art Int'l, Inc., 48 F.3d at 583-84. The instant Title VII sexual harassment claim (Count III) arises out of the same nucleus of operative facts as the 2012 Litigation. The plaintiffs seek to avoid this conclusion by arguing that since the "new claims were free of deficiencies, they are different claims from those recommended for dismissal by the Magistrate Judge." Opp. at 9. However, the conduct being challenged is the same in both lawsuits. Consequently, this second element of *res judicata* has been met. See Kale, 924 F.2d at 1166 ("So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity [for claim preclusion] is achieved if, and to the extent that, all such theories concern 'the same operative nucleus of fact.'" (citation omitted)).

Cichocki's present claim that the college and Nelson-Bailey violated Title VII by retaliating against him for making complaints of sexual harassment (Count IV) is also substantially identical to the claims made in the 2012 Litigation. In the 2012 Litigation, Cichocki alleged that the defendants retaliated against him "by refusing to give him his requested job assignment, and placing him on an unneeded, unwanted, and unrequested sick leave." 2012 Compl. at ¶ 15. They then allegedly cut, and eventually stopped, his paycheck and threatened him with job termination. Id. at ¶ 16. These are the same facts as alleged in the instant case. See, e.g.,

Compl. at 33, ¶ (5) ("Within seven months of Cichocki's first complaint of sexual harassment,

the college and Nelson-Bailey took Cichocki out of his service to the college, and withheld his

salaries and benefits").  While the 2012 Litigation alleges a violation of the FLSA anti-retaliation

provision (Count VI) as opposed to a violation of Title VII, the different legal theories do not

save the second litigation.  See Havercombe, 250 F.3d at 3-9 (res judicata bars a second lawsuit

alleging employment discrimination even where second lawsuit raises new legal theories and

covers an extended period of time).  Similarly, since all the conduct at issue was known to the

plaintiffs at the time of the 2012 Litigation, the instant retaliation claim could have been

asserted in 2012.  Since res judicata applies to claims that were, or could have been, asserted in

the earlier litigation, res judicata applies to the retaliation claim for this reason as well.  Bay

State HMO Mgmt. Inc., 181 F.3d at 177 (res judicata applies to "claims that were raised or could

have been raised" in earlier litigation)

      The third element of res judicata requires sufficient identity between the parties in the

two suits.  See Kale, 924 F.2d at 1166.  That element has been satisfied in the instant case, even

though Hwang was not a litigant in 2012, because she was in privity with Cichocki.  See

Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 757 (1st Cir. 1994) (privity is "a concept that

furnishes a serviceable framework for an exception to the rule that res judicata only bars

relitigation of claims by persons who were parties to the original litigation").  "[P]rivity exists

(and, therefore, nonparty preclusion potentially obtains) if a nonparty either substantially

controlled a party's involvement in the initial litigation or, conversely, permitted a party to the

initial litigation to function as his de facto representative."  Id. at 758.  Although Hwang was not

a party to the first litigation, Cichocki was clearly representing his wife's interests.  For example,

but without limitation, the 2012 Litigation challenged the no trespass order against Hwang, and

the fact that she had been escorted off campus.  See R&R at 15-17.  Cichocki also contended in

the 2012 Litigation that Nelson-Bailey had engaged in "criminal harassment and assault" on

Hwang.  R&R at 29.  A review of both complaints establishes that Hwang was a prominent

player in both cases — the factual allegations of both complaints are virtually identical despite

the fact that Hwang was not a named party in 2012.  Thus, the similarity of parties requirement

has been met.

Thus, for all the reasons detailed herein, the present claims of Title VII harassment and

retaliation must be dismissed on grounds of *res judicata*.[7]

### D.      FLSA Claims (Count V)

In Count V of the Complaint, the plaintiffs contend that "the defendant college withheld

Cichocki's teaching assignment and salaries and benefits" in violation of the "Fair Labor

Standard Act, Massachusetts Wage Act, Cichocki's employment contract, and Access to Medical

Report Act of 1988[.]"  Compl. at 33.  This claim arises out of the same nucleus of operative

facts as the FLSA claims asserted in the earlier litigation.  See R&R at 20.  In the 2012 Litigation,

it was determined that Cichocki was not likely to prevail on the merits of his claim because the

college had immunity under the Eleventh Amendment and because the pleadings were

---

[7] Since *res judicata* clearly applies, this court will not address the sufficiency of the Title VII claims.  If it did, however, this court would concur with Judge Collings' conclusion that the complaint is insufficient to state a claim.  See R&R at 14-15 (finding factual allegations are insufficient to state a claim).  Neither Cichocki's sexual harassment complaint to Human Resources (Opp. at Ex. 1), nor his union grievance (Opp. at Ex. 5), on which the plaintiffs rely in the instant litigation, provide the missing facts.

insufficient to state a claim.  R&R at 20-24.  As detailed above, Cichocki did not revise his

pleadings, and the 2012 Litigation was dismissed for failure to state a claim.

In the instant case, the doctrine of *res judicata* clearly bars the relitigation of these wage

claims, and the plaintiffs do not argue to the contrary.  The 2012 Litigation resulted in a final

judgment on the merits, and the two cases raise the same claims between the same parties.

No further analysis is necessary.  However, if this court were to reach the issue, it, too, would

find that the Eleventh Amendment bars the instant claim against the college for the same

reasons Judge Collings found in the 2012 Litigation.  See R&R at 20-23.[8]  Similarly, the

allegations of the complaint remain vague and insufficient to state an FLSA retaliation claim.

See R&R at 23-24.  For all these reasons, Count V must be dismissed.

### E.    Claims Under 42 U.S.C. § 1983 (Counts VI - IX)

The plaintiffs have brought various claims pursuant to 42 U.S.C. § 1983 purporting to

allege violations of their constitutional rights.  The defendants have moved to dismiss these

claims on the grounds that they are barred by the Eleventh Amendment, and because a § 1983

claim cannot be maintained against a state agency.  See Def. Mem. at 3-6.  However, this court

---

[8]  As detailed more fully in the 2012 R&R, the Eleventh Amendment bars a suit in federal court by a
public employee seeking to enforce the FLSA.  See Mills v. Maine, 118 F.3d 37, 48-49 (1st Cir. 1997);
Gusino Mercado v. Comm. of P.R., 214 F.3d 34, 40 (1st Cir. 2000) ("the FLSA does not divest the states'
Eleventh Amendment immunity").  Moreover, the fact that the Eleventh Amendment may not bar a suit
for prospective injunctive relief does not aid the plaintiffs in the instant case, since a private litigant
cannot maintain a suit for prospective injunctive relief under the FLSA.  See Mills, 118 F.3d at 55; Vega
Castro v. Puerto Rico, 43 F. Supp. 2d 186, 191 (D.P.R. 1999), aff'd sub nom. Jusino Mercado v. Comm. of
Puerto Rico, 214 F.3d 34 (1st Cir. 2000).

finds that these claims are barred by the doctrine of *res judicata*.  Therefore, no further analysis

is necessary.[9]

### *Res Judicata*

A comparison of the instant litigation with the 2012 Litigation establishes that they are

based on the same nucleus of operative facts in connection with the § 1983 claims detailed in

the instant case.  Since, as detailed above, there was a final judgment in the 2012 Litigation,

and Hwang was in privity with Cochicki so there is substantial identity of parties, the fact that

the instant § 1983 claims are based on allegations that mirror the factual allegations in the

earlier complaint compels the conclusion that the instant claims are barred by *res judicata*.

Briefly, in Count VI of the instant complaint, the plaintiffs allege that Cichocki's

constitutional rights "to life, and liberty, and to property" and Hwang's due process rights were

---

[9]  While in this court's view these counts would ultimately be dismissed for the reasons asserted by the defendants, their arguments require more analysis than provided by the defendants.  For example, while it is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983[,]" officials can be sued in their individual capacities under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. at 71, 109 S. Ct. at 2312; Powell v. Alexander, 391 F.3d 1, 22-23 (1st Cir. 2004) (discussing standard for determining capacity in which defendant is sued).  The plaintiffs allege (and defendants deny) that the named defendants are sued in their individual capacities.  See Docket No. 47.  That issue does not need to be resolved in a *res judicata* analysis, since there is no basis to find other than that the individuals are sued in the same capacity in this litigation as in the 2012 Litigation.  Assuming, *arguendo*, that as the plaintiffs contend the defendants are being sued in their individual capacities, they may be entitled to qualified immunity.  However, the defendants do not address this issue.  See Stamps v. Town of Framingham, 813 F.3d 27, 33-34 (1st Cir. 2016) (discussing standard for qualified immunity).  Finally, but without limitation, the Eleventh Amendment may not bar prospective injunctive relief.  See Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment.").  The defendants contend that the plaintiffs are only seeking prospective relief in connection with the FLSA claim, but the plaintiffs disagree.  See Def. Mem. at 5; Opp. at 6.  The scope of relief being sought does not need to be resolved under the *res judicata* analysis, since the same wrongs are alleged to have occurred in both lawsuits, and the types of relief being sought are substantially similar.

violated when "the college unlawfully prevented Hwang from accompanying Cichocki to work

to ward off Mcfadyen's aggressions which had threatened Cichocki's health, safety, job

security, and marriage[.]" Compl. at 34.  The same conduct formed the basis of the 2012

Litigation, albeit under different legal theories.  Thus, in the 2012 Litigation, Cichocki also

challenged the no trespass order issued against Hwang and the defendants' conduct in having

Hwang escorted off and barred from campus.  R&R at 15-16.

Similarly, in Count VII of the instant complaint, the plaintiffs allege that their

constitutional rights "to evidence" were violated, and the defendants obstructed justice, "when

defendants refused to provide evidence to Hwang and Cichocki[] pertaining to campus police's

2011 August issuance to Hwang a no trespass order," thereby preventing them from

challenging the order in court.  Compl. at 35.  In 2012, Cichocki had similarly brought a claim,

under a different legal theory, alleging that the defendants had wrongfully refused "to provide

Cichocki and Hwang with the requested police documents in connection with the issuance of

the No Trespass Order against Hwang."  R&R at 17.

In Count VIII of the instant complaint, the plaintiffs allege that their constitutional rights

were violated by the campus police when they came to Cichocki's classroom on December 14,

2011 and served them with the no trespass order.  Compl. at 36-37.  This precise conduct forms

the basis of the 2012 Litigation as well.  See, e.g., 2012 Compl. at ¶ 12 ("On December 14, 2011,

following a hospitalization, Cichocki returned to work at college.  Severely concerned with

Cichocki's health condition, Hwang accompanied Cichocki to work.  Nelson-Bailey called police

on Hwang, who then proceeded to force Hwang off of the college campus.").

Finally, in Count IX, the plaintiffs allege that the defendant Gaines interfered with Cichocki's attending physician, Dr. Sumio Shinohara, in violation of his "Constitutional rights to unobstructed evidence," resulting in a changed evaluation of his fitness to return to work. Compl. at 37-38.  Again, the same allegations were made in the 2012 Litigation.  See 2012 Litigation Comp. at ¶ 17 ("In an attempt to have the college restore his paychecks, Cichocki allowed the college to directly contact his psychologist, Dr. Shinohara for medical information. Defendant Gaines phoned Dr. Shinohara and pressured him to change his diagnosis of Cichocki and conducted hostile interrogation of Dr. Shinohara.").

"A single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law."  Kale, 924 F.2d at 1166. However, where, as here, the "prolific" theories of recovery all derive from "the same operative nucleus of fact[,]" "the causes of action are considered to be identical for *res judicata* purposes."  Id.  Given that precisely the same incidents form the basis of the 2012 Litigation and the instant case, the present suit must be dismissed.

"The policy rationale behind res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  Apparel Art Int'l, 48 F.3d at 583 (internal punctuation and citation omitted).  In the instant situation the same defendants have already successfully defended against substantially identical litigation.  A review of the dockets of the instant litigation and the 2012 Litigation reveals significant court involvement in connection with substantive motions.  The application of the doctrine of *res judicata* is entirely appropriate in the instant case.

-20-

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, the defendants' Motion to Dismiss (Docket No. 42) is

ALLOWED.

/ s / Judith Gail Dein

Judith Gail Dein

United States Magistrate Judge
